## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**DOBLE SEIS SPORT TV, INC., et al.,**

   **Plaintiffs,**

**v.**

**COMMONWEALTH OF PUERTO RICO, et al.,**

   **Defendants.**

Civil No. 18-1432 (ADC)

## OPINION AND ORDER

## I.  INTRODUCTION

Doble Seis Sport TV, Inc., and multiple other licensees of electronic game machines in Puerto Rico ("plaintiffs") filed a law suit before the Court, challenging the constitutionality of Puerto Rico Act No. 108 of August 23, 2017, PR Laws Ann., tit. 13 § 31712 ("Law 108"), under the Fourteenth Amendment ("Fourteenth Amendment") of the United States Constitution ("the Constitution") and the bill of attainder prohibition under the Constitution's Article 1, Section 10. *See* **ECF No. 23**. In essence, Law 108 amends the statute that establishes annual license fees for coin operated game machines to reclassify them and allow for fee increases starting on July 1, 2017. *Id*. The specific provision at issue in this case pertains to electronic game machines operated by coins or tokens, for use by adults, where the player's abilities or skills significantly

affect the final result of the game, and which do not have violent or sexual content. *See* Attachment 1, certified English translation of Law 18;[1] Puerto Rico Administrative Determination 18-08 04/30/2018, St. & Local Tax PR 18-08, 20XX WL 14333947. Law 108 raises from $300 to $3,000 the cost of the annual license fee for each electronic game machine that falls under the aforementioned category. *Id*. Moreover, plaintiffs allege that their due process and equal protection rights under the Fourteenth Amendment are being violated by defendants. **ECF No. 23**. As stated in the second amended complaint, "[p]laintiffs are being forced to renew their licenses at a markup of thirty (30) times their original price, while multinational corporations and its local franchises are allowed to buy and renew their licenses for the same type of machines and of machines with games that contain violent material for only $300 each." *Id*. at 12. Moreover, plaintiffs allege that Law 108 is an unconstitutional bill of attainder because "it single[s] out a particular group of license holders and impos[es] upon them a confiscatory and unjustified license fee." *Id.* at 11.

Plaintiffs filed a motion for preliminary injunction that would allow plaintiffs to pay the license renewal fee in question for the amount of $300. **ECF No. 4**. In support of their motion, plaintiffs aver that the four factors used by the Court to evaluate a request for preliminary injunction under Fed. R. Civ. P. 65 favor granting the same. *Id*. Co-defendants Commonwealth

---

[1] Inasmuch as Law 108's text and the statement of legislative intent are at issue regarding plaintiffs' motion for preliminary injunction, the Court deemed it necessary to obtain a certified translation, given that the Puerto Rico Legislature has not issued its official translation yet, and the parties did not provide one. *See* Attachment 1 to this Opinion and Order.

of Puerto Rico and Raúl Maldonado-Gautier, in his official capacity as Secretary of the Puerto

Rico Treasury Department (collectively "defendants"), filed an opposition, **ECF No. 15**, and

plaintiffs filed a reply upon leave of the Court, **ECF No. 48**. Although said reply was tardy, the

Court, in its discretion, has considered it.[2] After a thorough analysis of the pleadings, the parties'

motions, and the statute in question, the Court denies plaintiffs' request for preliminary

injunction.

## II.     STANDARD OF REVIEW

When deciding a motion for preliminary injunction under Fed. R. Civ. P. 65, a district

court weighs four factors: (1) plaintiff's likelihood of success on the merits; (2) the potential for

irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden

the defendant less than denying an injunction would burden plaintiffs; and (4) the effect, if any,

on the public interest. *Boston Duck Tours, LP v. Super Duck Tours, LLC,* 531 F.3d 1, 11 (1st Cir.

2008). The first factor, likelihood of success on the merits, is the "touchstone of the preliminary

injunction inquiry." *Id.* (citations omitted). Courts have found that where the moving party

cannot demonstrate a likelihood of success on the merits, the remaining factors become "matters

of idle curiosity." *Id.*

---

[2] The Court also considered the parties' arguments as to defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) that are related to plaintiffs' request for injunctive relief at hand. *See* **ECF Nos. 25, 31, 32**. The adjudication of defendants' Rule 12(b)(6) motion will be subject of a separate opinion and order.

As held by the First Circuit Court of Appeals ("First Circuit"), "[t]he web of conclusions upon which a preliminary injunction rests are statements as to probable outcomes, nothing more. Because final resolution of factual conflicts is [generally] reserved to time of trial . . . , the judge must be accorded some reasonable leeway in truncating the proceedings." *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 894 (1st Cir. 1988) (citations and internal quotation marks omitted). As such, while hearings are commonly held regarding a motion for preliminary injunction, it is in the Court's discretion to forego one under the particular facts and circumstances of a case. *Id*. at 893.[3] In the instant case, the Court holds that a hearing is not necessary to adjudicate plaintiffs' motion. As such, we now turn to the merits of plaintiffs' request for preliminary injunction under the four factors summarized above.

## III.    DISCUSSION

### 1.  Likelihood of Success on the Merits

---

[3] As held by the First Circuit Court of Appeals, in *Aoude v. Mobil Oil Corp*, 862 F.2d 890, 893 (1st Cir. 1988),

> an evidentiary hearing is not an indispensable requirement when a court allows or refuses a preliminary injunction. *See, e.g., Syntex Ophthalmics, [Inc. v. Tsuetaki,* 701 F.2d 677 682 (1st Cir. 1983)] (evidentiary hearing not mandated where "evidence already in the district court's possession" enabled it to reach reasoned conclusions); *Town of Burlington v. Department of Education,* 655 F.2d 428, 433 (1st Cir.1981) (evidentiary hearing not essential where parties exercised ample opportunity to make written submissions and plaintiff failed to submit affidavits or make offers of proof); *SEC v. Frank,* 388 F.2d 486, 490 (2d Cir.1968) (evidentiary hearing not compulsory for issuance of preliminary injunction in instances where "[t]he taking of evidence would serve little purpose"). Rather than accepting [plaintiff's] invitation to sponsor some inflexible rule, we prefer a more pragmatic approach.

As mentioned above, plaintiffs' second amended complaint and request for preliminary injunction contains two substantive claims against the constitutionality of Law 108 and in support of the request for preliminary injunction: (a) violation of due process and equal protection rights under the Fourteenth Amendment; and (b) bill of attainder.

**(a)     Fourteenth Amendment Claims**

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. The substantive component of due process protects against "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). There are two theories under which a plaintiff may bring a substantive due process claim. Under the first, a plaintiff must demonstrate a deprivation of an identified liberty or property interest protected by the Fourteenth Amendment. *Pittsley v. Warish*, 927 F.2d 3, 6 (1st Cir. 1991) (citing *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). Under the second, a plaintiff is not required to prove the deprivation of a specific liberty or property interest, but rather, he must prove that the state's conduct "shocks the conscience." *Pittsley*, 927 F.2d at 6 (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)).

Procedural due process requires that the procedures provided by the state in executing the deprivation of a vested interest in life, liberty, or property are adequate in light of the affected interest. *Pittsley*, 927 F.2d at 6; *Reardon v. United States,* 947 F.2d 1509, 1517-18 (1st Cir. 1991). As

such, the Court determines if there is available an adequate remedy under Commonwealth of Puerto Rico law; if there is, it is fatal to a procedural due process claim. *See Smith v. Massachusetts Dep't of Correction,* 936 F.2d 1390, 1402 (1st Cir. 1991); *see also Albright v. Oliver,* 975 F.2d 343, 347 (7th Cir. 1992) ("The multiplication of remedies for identical wrongs, while gratifying for plaintiffs and their lawyers, is not always in the best interest of the legal system or the nation."), *aff'd,* 510 U.S. 266 (1994). Quite simply, "a procedural due process claim may not be redressed under section 1983 where an adequate state remedy exists." *Reid v. New Hampshire,* 56 F.3d 332, 341 (1st Cir. 1995).

Under the equal protection clause of the Fourteenth Amendment, "persons similarly situated must be accorded similar governmental treatment." *Marrero-Gutiérrez v. Molina,* 491 F.3d 1, 9 (1st Cir. 2007). For an equal protection claim to be actionable, a plaintiff must adequately allege that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freeman v. Town of Hudson,* 714 F.3d 29, 38 (1st Cir. 2013) (citations and internal quotation marks omitted).

In the instant case, plaintiffs fail to articulate in their amended complaint, or in any subsequent motion, the specific life, liberty, or property interest protected by the Fourteenth Amendment that they seek to safeguard by their request for preliminary injunction. *See* **ECF**

**Nos. 4, 23, 31, 48**.[4] Instead, their due process claim is predicated on a challenge to a substantial increase in a particular classification of electronic game machine license fees which, plaintiffs contend, will put them out of business if it is not stopped by the Court. **ECF Nos. 23** at 12; **31** at 12; **48** at 4. However, even assuming that plaintiffs have a Fourteenth Amendment right to specific license fees that they deem affordable, applicable law provides an administrative procedure and judicial review through which plaintiffs may pursue their claims with the Commonwealth of Puerto Rico. *See* PR Laws Ann., tit. 13 §§ 33051, 33061. Plaintiffs contend that the remedies available under Puerto Rico law are futile, given the Commonwealth of Puerto Rico's insolvency and the unduly long length of administrative and legal procedures in the local forums. **ECF Nos. 4** at 12; **31** at 11-13. However, even if true, that alone is insufficient to warrant a preliminary insofar as the statute in question provides for administrative and judicial remedies nonetheless, regardless of how long the process may be.

Moreover, plaintiffs' substantive due process claim is based on plaintiffs' contention that the license fee increase is so extreme, arbitrary, and discriminatory that it shocks the conscience under applicable standards. **ECF Nos. 31** at 9-11; **48** at 3-4. However, as stated by the First Circuit,

> We have held, with a regularity bordering on the monotonous, that the substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or wrong. While we have left

---

[4] Plaintiffs' failure is notable in light of defendants' repeated assertions in their opposition to plaintiffs' request for preliminary injunction, motion to dismiss, and reply to opposition to motion to dismiss as to a lack of an identifiable life, liberty, or property interest in plaintiffs' claim. *See* **ECF Nos. 15** at 6; **25** at 5; **32** at 4.

the door slightly ajar for truly horrendous situations, any permit or license denial, no matter how unattractive, that falls short of being "truly horrendous" is unlikely to qualify as conscience-shocking.

*Pagán v. Calderón*, 448 F.3d 16, 32-33 (1st Cir. 2006) (citations omitted).

Additionally, plaintiffs aver that they are "being forced to renew their licenses at a markup of thirty (30) times their original[ ] price, while multinational corporations and its [sic] local franchises are allowed to buy and renew their licenses for the same type of machines . . . for only $300 each." **ECF No. 23** at 10-11; *see also* **ECF Nos. 31** at 8-9; **48** at 2. While plaintiffs have not expressly stated the protected category under which they raise their equal protection claim, the Court deems that it is the citizenship of the plaintiff corporations vis-à-vis that of "the multinational corporations," which are presumably not Puerto Rico citizens. *See id*. Nonetheless, the statute in question does not establish any distinction among licensees based on their citizenship or any other protected category. *See* Attachment 1, certified English translation of Law 108; Puerto Rico Administrative Determination 18-08 04/30/2018, St. & Local Tax PR 18-08, 20XX WL 14333947. In fact, the only distinctions under Law 108 that determine the amount of annual license fee to be paid are based on the different types of electronic game machines subject to annual fees, regardless of who applies for the license. *See id*. As such, the Court holds that Law 108 is neutral on its face in that regard. Moreover, as correctly averred by defendants, plaintiffs "fail to offer any factual allegation that would support" their claim of disparate treatment under the equal protection clause. **ECF No. 15** at 2; *see also* **ECF Nos. 25** at 4, 7-8; **32** at 3. Thus, plaintiffs' bare assertion about the supposed disparate treatment by the Commonwealth of Puerto Rico

against plaintiffs and in favor of multinational corporations when enforcing Law 108 is insufficient to support a preliminary injunction at this stage.

**(b)      Bill of Attainder**

Plaintiffs allege as follows:

> From a reading of the Statement of Motives of Act No. 108 of 2017 it is clear that the legislative intent was to punish the holders of the licenses mentioned in the Complaint for making legally approved modifications to their equipment in order to be able to qualify for a license under Article 3050.02. The Puerto Rico legislature accuses the holders of this type of license of having desisted (in quotation marks) of giving out prizes to their clients (also in quotation marks) in order to avoid paying a higher license fee. In other words, the legislature is clearly accusing the holders of this type of license of violating the Puerto Rico Games of Chance Law and tries to use Act No. 108 as punishment and as a deterrent to this alleged illegal conduct. Raising this license fee thirty (30) times its original price is clearly intended to punish any person or entity that intends to operate this legal and authorized type of electronic machine. Thus, the statute does not further any other non-punitive measure . . . .

**ECF No. 4** at 9. Based on the above, plaintiffs contend that Law 108 is an unconstitutional bill of attainder in violation of Article 1, Section 10 of the United States Constitution. **ECF Nos. 4** at 8-10; **31** at 13-14.

In essence, the constitutional provision in question prohibits states from enacting laws that intend to punish an identifiable person or group without providing judicial process safeguards. *See Nixon v. Administrator of General Services*, 433 U.S. 425, 468-75 (1977). Nonetheless, "[h]owever expansive the prohibition against bills of attainder, it surely was not intended to serve as a variant of the equal protection doctrine, invalidating every Act of Congress or the States that legislatively burdens some persons or groups but not all other plausible individuals."

*Id.* at 471. In that respect, Law 108 is not a bill of attainder, given that as discussed above, the statute is neutral on its face, applying without distinction to all licensees of the electronic game machines subject to it. Additionally, it provides mechanisms of administrative and judicial review before the Commonwealth of Puerto Rico for those licensees who wish to challenge the new fees.

Furthermore, upon review of Act No. 108's statement of legislative intent, the Court concludes that it furthers a legitimate state interest. Specifically, as correctly asserted by defendants,

> One of [Law 108's] intentions, along with increasing license fees across the board, was to reclassify the types of licenses for electronic gaming machines. To wit, the Statement of Purpose of [Law 108] indicates that the trend between 2011 and 2017 was for more and more licenses for electronic gaming machines to be requested, with a fee of $100.00, and less and less for adult entertainment gaming machines, with a fee of $2,500.00. The 2011 law defined adult entertainment gaming machines as having to reward or compensate whoever played them. This created a loophole whereby operators could remove the reward feature from the machine and apply for a lower fee license. That is why there were 1,002 licensed electronic gaming machines and 8,355 adult entertainment machines in Puerto Rico in 2009, and now those numbers have changed to over 23,000 and 0, respectively. Law 108 removed that loophole by reclassifying the licenses for electronic gaming machines. Under the new framework, [p]laintiffs fall under Article 3050.02(a)(2)(C) and the fee is $3,000.00. 13 L.P.R.A. § 31712 . . . . It is evident that the statute does not single out a person or group of persons and it does not intend to punish anyone. Furthermore, the Puerto Rico Legislature acted within its constitutional powers when passing said law.

**ECF No. 15** at 7-8.

In short, the Court holds that the fundamental element on behalf of granting a preliminary injunction under Fed. R. Civ. P. 65—likelihood of success on the merits—does not favor plaintiffs in this case.

## 2. Potential for Irreparable Harm

Plaintiffs face a high burden of showing that irreparable harm will result from a denial of the requested preliminary injunction, especially in light of the Court's holding as to the likelihood of success on the merits, above. *See E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 738, 743 (1st Cir. 1996). Additionally, "[t]he necessary concomitant of irreparable harm is the inadequacy of traditional legal remedies. The two are flip sides of the same coin; if money damages will fully alleviate harm[,] then the harm cannot be said to be irreparable." *Kmart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir. 1989).

Plaintiffs contend that absent a preliminary injunction from the Court, the new licensing fee in question will put them out of business. **ECF Nos. 4** at 11-12. Specifically, plaintiffs argue that since the new license fees are unaffordably high, pursuing administrative remedies and judicial review before the Commonwealth of Puerto Rico will prove fatal to their businesses because it will take several years to adjudicate and obtain a remedy, especially in light of said government's insolvency. *Id*. Plaintiffs' arguments in that respect are speculative. In their motions, plaintiffs do not substantiate their allegations of irreparable harm beyond illustrating by how much their annual license fees would increase under Act No. 108. *See* **ECF Nos. 31** at 10-11; **48** at 3-4. In short, plaintiffs have not established a probability of irreparable harm in absence

of a preliminary injunction, especially given that plaintiffs' likelihood of success on the merits of

the case is uncertain. *See supra*.

### 3. Balance of Hardships

According to plaintiffs, the balance of hardships tilts in their favor. **ECF Nos. 4** at 12-13;

**48** at 4-5. Specifically, they assert that

> [W]hile the amount charged to Plaintiffs would increase[ ] their license related
> expenses thirtyfold, the amount collected by this increase would still be a
> miniscule amount of the Commonwealth's budget of 8 plus billion dollars. Thus,
> it is clear that while the harm caused to Plaintiffs if the injunction is denied would
> surely put them out of business, the same cannot be said of the Defendants if the
> requested remedy is granted.

**ECF No. 4** at 13. Conversely, defendants contend that any reduction in the projected income of

the Commonwealth of Puerto Rico would have a considerable deleterious effect on state

government finances, especially given that it is currently undergoing proceedings under the

Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"). **ECF No. 15** at

11-12. The Court holds that the balance of hardships does not favor plaintiffs, given their

uncertain probability of success on the merits and the conjectural nature of their allegations of

irreparable harm absent a preliminary injunction. *See supra*.

### 4. Public Interest

Referring to Law 108, plaintiffs argue that "[p]ublic interest would favor putting a stop

to this kind of discriminatory legislation and of the disparate treatment that the [Puerto Rico]

Treasury Department is giving to [p]laintiffs vis-à-vis other similarly situated corporations."

**ECF No. 4** at 13. However, as discussed above, Law 108 is neutral on its face as to the licensees to whom the license fees in question apply. Moreover, plaintiffs' unsubstantiated allegations of disparate treatment by the Commonwealth of Puerto Rico against plaintiffs and in favor of multinational corporations is insufficient to support the requested preliminary injunction. Thus, the public interest factor favors the Commonwealth of Puerto Rico, which as stated by plaintiffs, has "the discretion to create different methods of taxation and ways to classify and distinguish them in their local internal revenue codes." *See Id.* at 7 (citing *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 547-548 (1983)). It is also in the public interest for the Commonwealth of Puerto Rico to maximize its collection of taxes and fees, given its current fiscal situation and ensuing demands under PROMESA.

   2.  **CONCLUSION**

   None of the four factors to consider a motion for preliminary injunction under Fed. R. Civ. P. 65 favor plaintiffs. Accordingly, their motion to that effect at **ECF No. 4** is **DENIED**.

   **SO ORDERED**.

   At San Juan, Puerto Rico, on this 11th day of March, 2019.

                                        **S/AIDA M. DELGADO-COLÓN**
                                        **United States District Judge**