THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**DOBLE SEIS SPORT TV, INC., et al.,**

    **Plaintiffs,**

    v.

**COMMONWEALTH OF PUERTO RICO, et al.,**

    **Defendants.**

**Civil No. 18-1432 (ADC)**

## OPINION AND ORDER

Before the Court is Doble Seis Sport TV, Inc., and other licensees' ("plaintiffs") motion to show cause in opposition to the Commonwealth of Puerto Rico and Hon. Raúl Maldonado-Gautier's ("defendants") motion for dismissal under Fed. R. Civ. P. 12(b)(6). **ECF No. 73**.

For the following reasons, the Court **DENIES** the motion at **ECF No. 73** and **DISMISSES** the second amended complaint's Equal Protection claim.

**I.  Background**

Plaintiffs challenge the constitutionality of Puerto Rico Act No. 108 of August 23, 2017, PR Laws Ann., tit. 13 § 31712 ("Law 108"), under the Fourteenth Amendment ("Fourteenth Amendment") of the United States Constitution ("the Constitution") and the bill of attainder prohibition under the Constitution's Article 1, Section 10. *See* **ECF No. 23**. Law 108 increases the annual license fees for certain coin operated electronic gaming machines. According to plaintiffs,

Law 108 raises plaintiffs' annual license fee from $300 to $3,000, while multinational corporations and their local franchises (*i.e.* Dave & Buster's Corp. and Dave & Buster's Puerto Rico Inc. ("DB"), *see* **ECF No. 73** at 4*)* are allowed to buy and renew their licenses for only $300 each. Plaintiffs also asserted that Law 108 singles them out as a particular group of license holders and imposes a "confiscatory license fee" upon them. Thus, plaintiffs claim their due process and equal protection rights under the Fourteenth Amendment are being violated by defendants. *Id.*

Plaintiffs moved for preliminary injunction. **ECF No. 4**. The Court denied plaintiffs' motion for preliminary injunction. **ECF No. 51.**[1] Defendants then filed a motion to dismiss the complaint for failure to state a claim. **ECF No. 25**. Plaintiffs opposed, and defendants replied. **ECF Nos. 31, 43**.

Via Opinion and Order, on August 14, 2019, the Court dismissed the second amended complaint's procedural due process, substantive due process, and Bill of Attainder claims. **ECF No. 63**. As to plaintiffs' remaining claim under the Equal Protection of law, the Court held that

> the statute in question does not establish any distinction among licensees based on their citizenship or any other protected category… the only distinctions under Law 108 that determine the amount of annual license fee to be paid are based on the different types of electronic game machines subject to annual fees, regardless of who applies for the license. See id. As such, the Court holds that Law 108 is neutral on its face in that regard. Moreover, as correctly averred by defendants, plaintiffs 'fail to offer any

---

[1] The holdings therein are the law of the case; the Court hereby incorporates the same herein as deemed pertinent for the matter at hand. *See United States v. Morán*, 393 F.3d 1, 7 (1st Cir. 2004); *Ellis v. United States*, 313 F.3d 636, 646 (1st Cir. 2002).

Case 3:18-cv-01432-ADC   Document 90   Filed 11/27/20   Page 3 of 12

**Civil No. 18-1432 (ADC)**                                                                                                    **Page 3**

factual allegation that would support' their claim of disparate treatment under the equal protection clause.

*Id* at 9.

However, "in an abundance of caution," the Court granted plaintiffs sixty (60) days to conduct discovery limited to what is pertinent to plaintiffs' allegations of violation of equal protection of law as pleaded in the second amended complaint and ordered plaintiffs to show cause as to why the Court should uphold its original finding under Rule 12(b)(6). **ECF No. 63** at 10 ("plaintiffs' allegations seem to entail bare assertions, not well pleaded facts that should be taken as true under Rule 12(b)(6) standards.")

After the conclusion of the discovery, plaintiffs filed a motion to show cause. **ECF No. 73**. In essence, plaintiffs' arguments revolve around the notion that defendants have discriminated against them by applying Law 180's higher fees to them, while favoring and exempting foreign corporations such as DB from the same fee scheme. Specifically, it is asserted that "once Act No. 108 went into effect… [BD] stopped holding a single one of these licenses[…] the reality is that they do continue to operate electronic gaming machines with violent content… while apparently not paying the $3,000.00 required for each of those machines." *Id* at 6. Plaintiffs add that DB "still operates electronic gaming machines identical to those of Plaintiffs, even though they were never issued a license for them during the years 2017 and 2018." *Id*.

Plaintiffs also contend that the government did not inspect DB's machines. *Id* at 7. Had the inspections taken place, plaintiffs contend, "internal revenue agents would have realized

that said corporation has some of the same exact machines as Plaintiffs operating in its business," including, for example, DB's "Tutti Fruitti Touch Game." *Id*. Plaintiffs go on to assert that "while [DB] allegedly didn't operate any machines with violent content during the year 2018, from the invoices attached to their December 2017 license applications, it is clear that they do operate… machines with that type of content[,]" including "Aliens Armageddon." *Id* at 8. Accordingly, plaintiffs feel they "have been treated differently from [DB] and there is no rational relationship between that disparate treatment and a legitimate government purpose." *Id*.

Defendants opposed at **ECF No. 78** by stating that plaintiffs' contentions are simply not true. *Id* at 2, 3. First, after inspecting DB's machines, the Puerto Rico Treasury Department's agents recommended the issuance of fourteen (14) licenses for machines with sexual or violent content (also known as "745" license) and hundreds of other licenses for machines of different content and nature. *Id*. Second, DB "has, and has had since 2017 up until March of 2020, valid and active electronic gaming licenses, classified as 745 [ licenses] for violent content, with a fee of $3,000.00 each." *Id* at 4. Finally, defendants object plaintiffs' argument as to the specific qualification and content of the "Tutti Frutti" machine. *Id*. 7. In any event, defendants contend, "Tutti Frutti" machine is not subject to the $3,000 fee in question as it is not a game depicting sexual or violent content. Even if plaintiffs were in fact levied a fee that is not in accordance with the law for the "Tutti Frutti"-alike machines, such an error does not constitute a violation under the Equal Protection clause but rather a simple mistake that could have been resolved directly with state agencies. *Id*.

Plaintiffs filed a short reply merely requesting an order from the Court to inspect the "Tutti Frutti" machine, and to allow filings of expert reports in order to show that they own machines similar to DB's "and thus should hold the same type of license." **ECF No. 86** at 3. Notably, however, plaintiffs did not comment or supplement any of the arguments raised in their motion to show cause. Nor did they rebut defendants' arguments at **ECF No. 78**.

Defendants filed a sur-reply. **ECF No. 89**. They stressed the fact that plaintiffs' sole argument in reply does not challenge the fee applied to DB for the "Tutti Frutti" machine. Rather, plaintiffs only assert that they have a similar machine, which fee has been set at $3,000. *Id*.

## II.     Standard of Review

> The Fourteenth Amendment's Equal Protection Clause prohibits a state from treating similarly situated persons differently because of their classification in a particular group. Generally, for an equal protection claim to survive a motion to dismiss, a plaintiff must allege facts plausibly demonstrating that compared with others similarly situated, the plaintiff was selectively treated based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Mulero-Carrillo v. Román Hernández*, 790 F.3d 99, 105-106 (1st Cir. 2015).

Under the equal protection clause of the Fourteenth Amendment, "persons similarly situated must be accorded similar governmental treatment." *Marrero-Gutiérrez v. Molina*, 491 F.3d 1, 9 (1st Cir. 2007). For an equal protection claim to be actionable, a plaintiff must adequately allege that: "(1) the person, compared with others similarly situated, was selectively

treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013) (citations and internal quotation marks omitted).

### III.   Analysis

First of all, as previously discussed in this Court's Opinion and Order at **ECF No. 63**, "plaintiffs have not expressly stated the protected category under which they raise their equal protection claim." Unfortunately, the same still holds true today. Even though the Court assumed that the protected category was the citizenship of plaintiffs' corporation "vis a vis that of 'the multinational corporations'" *id* at 9, no further attempt to supplement the grounds for their Equal Protection claim has been made.

Not relying on Equal Protection's typically impermissible classifications, such as race, religion, etc., plaintiffs were bound to show that they were "intentionally treated differently from others similarly situated, that no rational basis exist[ed] for that difference in treatment, and that the different treatment was based on a malicious or bad faith intent to injure." *Buchanan v. Maine,* 469 F.3d 158, 178 (1st Cir. 2006); *Rocket Learning, Inc. v. Rivera-Sánchez*, 715 F.3d 1, 10 (1st Cir. 2013). Plaintiffs' second amended complaint certainly fails to set forth these elements. **ECF No. 23**. The motion to show cause and plaintiffs' reply fall short as well. **ECF Nos. 73, 83.**

Even if the Court assumed that plaintiffs set forth sufficient allegations as to defendants' intentional disparate treatment based on bad faith, the fact remains that the purported unequal

treatment is simply inexistent. Plaintiffs contend that DB has been favored by defendants as they have been allowed to operate uninspected gaming machines with sexual or violent content without a license and without paying the $3,000 fee required under Law 108. **ECF No. 73** at 6-8. However, pursuant to the documents submitted by plaintiffs, that is not at all the case. *See* **ECF Nos. 73-1, 73-2, 73-3, 73-4, 73-5, 73-6, 73-7;** certified translations at **ECF Nos. 82-1, 82-2, 82-3, 82-4**.

Plaintiffs argue that DB operated gaming machines "even though they were never issued a license for them during the years 2017 and 2018." **ECF No. 73** at 6. However, this assertion is contrary to the documents submitted and to plaintiffs' own narrative elsewhere. According to the record, DB applied for gaming machine licenses in August 24, 2017 and in December 14, 2017. **ECF Nos. 82-2, 82-3**. Moreover, plaintiffs concede that "during the year 2017… [DB] had 14 licenses" for games with sexual or violent nature. **ECF No. 73** at 6. The spreadsheets submitted at **ECF Nos. 78-2, 78-3** show that the licenses were renewed up until March, 2020. Thus, plaintiffs cannot assert that defendants treated them differently by requiring them to secure and obtain the applicable gaming machine licenses.

Second, plaintiffs' argument standing for the proposition that defendants treated them less favorably than similarly situated corporations by only requiring the inspection of plaintiffs' machines, is also unavailing. **ECF No. 73** at 8. DB's license application, submitted by plaintiffs at **ECF No. 82-2** clearly shows that an "agent" from the Puerto Rico Treasury Department actually conducted an investigation and inspection of the DB's machines. Furthermore, the

agent charged with conducting the inspections on behalf of the Treasury Department recommended the issuance of hundreds of licenses in favor of DB, indicating that "at the time of the inspection they compl[ied] with the minimum legal requirements." **ECF No. 82-2**. This means that before DB obtained the licenses disputed by plaintiffs, DB's machines were inspected by the Treasury Department's agents. Accordingly, plaintiffs' contention that "from the documentation provided by the Defendants there is no evidence that the machines for which those licenses were being requested were ever inspected" is disingenuous at best. **ECF No. 73** at 7.

The Court now turns to the crux of plaintiffs' Equal Protection claim: whether defendants discriminated against plaintiffs and treated them in a matter less favorable than similarly situated entities by exempting only "foreign corporations" like DB, from Law 108's $3,000 license fee. **ECF No. 73** at 7-8. As explained in defendants' response at **ECF No. 78**, plaintiffs' argument is untenable and seems to be the result of a misunderstanding.

Puerto Rico Law No. 1 of January 31, 2011, PR Laws Ann. tit. 13 § 3178 ("Law 1") sets forth the process by which a party can issue payment for license fees. It provides as follows:

> (a) The license fees required in §§ 31711, 31712, 31713 and 31714 of this title shall be paid on an annual basis. **In the case of new licenses, the required license fees shall be paid proportionately to the number of months during which they shall be valid in accordance with the table in subsection (b). In these cases, the payment shall cover, and be apportioned to, the total number of months from the date in which the new license is issued to the date in which the payment of the license fee is once again due. Notwithstanding, the taxpayer shall have the option to make the payment corresponding to the number of months from the date**

**in which the new license is issued to the date in which the payment of the license fee is once again due, plus an additional year.** In the cases in which the taxpayer opts for this option of payment, the license shall cover the number of months that such a payment covers.

(b)     The license fee payment due date shall be based on the last digit of the taxpayer's social security number or employer identification number, as applicable, according to the following table:

Last digit of Month in which Social Security number the license fee is due :
 1 January, 2 February, 3 March, 4 April, 5 May, 6 June, 7 July, 8 August, 9 September, 0 October.

The renewal date and license fee payment date thus vary depending of the licensee's social security number. Pursuant to subsection (b) of Law 1 cited above and DB's social security number, the license renewal date for DB's electronic gaming machines falls on the month of March.[2] Because DB's licenses were issued on November, 2017 before Law 108 was signed into law, the then applicable fee (for a 745 license, which encompasses games with sexual or violent content) was $400. Pursuant to the payment option provided in Law 1, DB opted to make a *pro rata* payment for the months of November, 2017 to March, 2018 (*i.e.* $133.32 for the months of November, 2017 to March, 2018 for each 745 license) plus a payment in full of the renewal fee (*i.e.* $400 for each 745 license) for the year starting on March, 2018 and ending on March, 2019. The documents submitted by plaintiffs evince that DB, as matter fact, paid $533 for each of its 745 licenses. *See* **ECF No. 82**-1 at 4-5; **ECF No. 73-3**. The amounts paid by DB demonstrate that

---

[2] Plaintiffs' renewal date presumably falls on a different month.

it paid, the then applicable license fee covering the period of time between November, 2017 to March, 2019.

According to the second amended complaint, the new license fee scheme under Law 108 came into effect in May,2018. **ECF No. 23** at 10. Because DB's licenses were paid for and valid until March, 2019, DB's first payment under Law 108's new license fee schedule was not due until exactly March, 2019. According to the documents submitted at **ECF No. 78-2** at 1, defendants required DB to pay a license fee of $3,000 for each of its 745 licenses on March, 2019. In other words, defendants required the same license fee amount from DB as they did from plaintiffs. Therefore, there is not plausible Equal Protection claim based on defendants' levy of Law 108 license fee.

Notably, plaintiffs did not counter any of defendants' arguments in their reply at **ECF No. 78**. Rather, plaintiffs filed a four-page reply contending that defendants have treated them differently from DB in connection with the license fee required for similar machines. **ECF No. 86** at 1-2. Specifically, they argue that they own electronic gaming machines similar to DB's "Tutti Fruitti." *Id* at 2. Yet, plaintiffs assert, defendants require a $3,000 license fee for plaintiffs' machines while only $300 license fee for BD's "Tutti Fruitti." *Id* at 2-3. Finally, plaintiffs requested a Court authorized- inspection and expert witness-comparisons between BD's "Tuti Fruitti" and their "similar" electronic gaming machines.

As a threshold matter, plaintiffs did not offer any detail as to which of their gaming machines were similar to the "Tutti Fruitti," or how exactly are they "similar." **ECF No. 86**. The

Court granted plaintiffs time to conduct discovery in order to allow them to be in a position to show the Court why their Equal Protections claims should not be dismissed. There is no indication as to the kind of machines plaintiffs are comparing to the "Tutti Fruitti." **ECF No. 86**. Neither did plaintiffs offer any support for their arguments. *Id*. In addition, plaintiffs' request for inspections is unreasonably late considering that the request comes six months after the Court ordered plaintiffs time to conduct discover in this case.

Plaintiffs' argument regarding the "Tutti Fruitti" issue is not only unsupported, but also unavailing. In their reply at **ECF No. 86**, plaintiffs concede that the machines they claim are "similar" to the "Tutti Fruitti," "**[do] not operate [] the same way**" as the "Tutti Fruitti." **ECF No. 86**. Moreover, plaintiffs concede that DB's "Tutti Fruitti" is a "skill based" electronic game, but they object because defendants only require BD a $300 license fee for each "Tutti Fruitti." *Id* at 2-3. However, that is the correct license fee under § 31712(a)(3)(A): "[f]or each… entertainment machine… that (i) does not contain violent or sexual material and that can be used by every person, including minors, and (ii) when the abilities or skills of the player significantly affect the outcome of the game. $300.00." Thus, plaintiffs' complaint as to the treatment they receive vis a vis DB's treatment in connection with the "Tutti Fruitti" electronic game is unsustainable from an Equal Protection standpoint as plaintiffs have not been treated differently.

IV. **Conclusion**

For the reasons above the Court hereby **DENIES** the motion to show cause at **ECF No. 73**. Plaintiffs have failed to comply with the Opinion and Order by failing to adequately "show

Case 3:18-cv-01432-ADC Document 90 Filed 11/27/20 Page 12 of 12

**Civil No. 18-1432 (ADC)** **Page 12**

cause as to why the Court should not grant defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) regarding the claim of violation of equal protection rights." **ECF No 63** at 10. According to the Court's holding in the Opinion and Order at **ECF No. 63** and the reasons discussed above, plaintiffs' remaining Equal Protection claim is hereby dismissed. Considering that the Court previously dismissed plaintiffs' Due Process and Bill of Attainder claims, the second amendment complaint is hereby **DISMISSED WITH PREJUDICE**.

Judgment shall be entered accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 27th day of November, 2020.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**